Matthew M. Levy, J.
This is a proceeding arising out of an accident in which the infant claimant was injured by an automobile owned by one Ortiz and operated by one Diaz. The claimants — entitled by the respondent (which instituted this proceeding) as petitioners — served a notice of arbitration upon the Motor Vehicle Accident Indemnification Corporation, which entitled itself herein as the respondent (but, see, Matter of Graffagnino v. MVAIC, 48 Misc 2d 441; Matter of Klein v. MVAIC, 48 Misc 2d 82, 83). The respondent by this proceeding applied at Special Term for Motions for an order staying arbitration pending the fulfillment of certain conditions. Such an order was granted, and the preliminary determination of the issue as specified therein as to “ whether the alleged responsible vehicle was an ‘ uninsured vehicle ’ at the time of the alleged accident ” was referred for trial.
The hearing on such initial issue was held before me without a jury, the trial concluding in October, 1965. The proof is that the automobile involved in the accident was in fact “ insured ”, as that term is generally understood. But that does not dispose of the matter, for I permitted the claimants at the trial to project the issues that the vehicle was stolen from the assured, that at the time of the accident it was being operated by the driver without the permission of the owner, and that the insurance carrier had disclaimed liability. There was no suggestion of surprise on the part of the respondent, and both parties proceeded to trial on these issues. This procedure I adopted in the interests of justice and expedition, although the order of reference was not thus expressed in so many words, nor was a motion made to resettle the order accordingly before the Judge who had directed the trial of the preliminary issue in the first instance, nor was a motion made before me at the trial so to resettle the order, or to modify or expand it (assuming that I had the power to entertain such an application). It would, of course, *960 have facilitated the trial, consideration and disposition of the case had the order directing a preliminary hearing been so drafted by counsel and entered by the court as to be clearly explicit and adequately inclusive.
It is, therefore, now a matter for my decision as to whether the procedure I followed was — on the law — a correct one; and, if so, whether the claimants — on the facts — proved by a preponderance of the credible evidence that the vehicle was stolen or used without permission, or whether there was a disclaimer by the insurance carrier.
Article 17-A of the Insurance Law of this State, known as the Motor Vehicle Accident Indemnification Corporation Law, in section 601 thereof, quite specifically defines the phrase — “ uninsured vehicle ”— used by my learned colleague at Special Term, or one so close to it (“ uninsured motor vehicle ”) as, for present purposes, to be deemed identical. The relevant definitions follow:
“e. ‘ Insured motor vehicle ’ means a motor vehicle as to which there is maintained proof of financial security as defined in subdivision three of section three hundred eleven of the vehicle and traffic law.
“ d. ‘ Uninsured motor vehicle ’ means a motor vehicle other than a motor vehicle described in subdivision c. ’ ’
The referred-to portion of the Vehicle and Traffic Law reads as follows: “3. The term ‘ proof of financial security ’ shall mean proof of ability to respond in damages for liability arising out of the ownership, maintenance or use of a motor vehicle as evidenced by an owner’s policy of liability insurance, a financial security bond, a financial security deposit, or qualification as a self-insurer under section three hundred sixteen of this chapter or, in the case of a non-resident, under self-insurance provisions of the laws of the jurisdiction of such non-resident. ’ ’
It should also be noted that the New York automoblie accident indemnification endorsement, under the provisions of which arbitration is sought by the petitioners herein, defines the pertinent term, in Insuring Agreement II (b), as follows:
“(b) Uninsured Automobile. The term ‘ uninsured automobile ’ means:
“ (1) an automobile with respect to the ownership, maintenance or use of which there is, in the amounts specified in the New York Motor Vehicle Financial Security Act, neither (i) cash or securities on deposit with the New York Commissioner of Motor Vehicles nor (ii) a bodily injury liability bond or insurance policy, applicable to the accident with respect to any *961 person or organization legally responsible for the use of such automobile; or
“ (2) a hit-and-run automobile as defined” herein and in subdivision (c).
Subdivision (2) of section 600 of the Insurance Law, in declaring the purpose of the Motor Vehicle Accident Indemnification Corporation Law, states that its aim is to fill gaps in the prior law, to the end of ‘ ‘ securing to innocent victims of motor vehicle accidents recompense for the injury and financial loss inflicted upon them * * * [where they] were involved in motor vehicle accidents caused by (1) uninsured motor vehicles registered in a state other than New York, (2) unidentified motor vehicles which leave the scene of the accident, (3) motor vehicles registered in this state as to which at the time of the accident there was not in effect a policy of liability insurance, (4) stolen motor vehicles, (5) motor vehicles operated without the permission of the owner, (6) insured motor vehicles where the insurer disclaims liability or denies coverage and (7) unregistered motor vehicles.” Subdivision 2-a of section 167 of the Insurance Law specifies (without numbering) these enumerated several situations in which the MVAIC endorsement becomes operative so as to render proper the making of a claim against the MVAIC.
The several conditions precedent listed in the statute are all factual issues, as to each of which the burden of proof is upon the claimant (McCarthy v. MVAIC, 16 A D 2d 35, affd. 12 N Y 2d 922). Numbers 1, 2 and 7, quoted supra (Insurance Law, § 600, subd. [2]), are not in issue in this case, none of them having been asserted — one way or the other — by either of the parties. As to Numbers 3 and 6, it was the uncontradicted testimony of a representative of the Fidelity and Casualty Company, the insurer of the allegedly responsible vehicle, that there was a policy of liability insurance in effect on the automobile in question[1] 2on the date in question, and that there has been neither *962 disclaimer of liability nor denial of coverage by the insurer in regard to the accident. The statute provides that the insurer ‘ ‘ shall give written notice as soon as is reasonably possible of such disclaimer of liability or denial of coverage to the insured and the injured person or any other claimant” (Insurance Law, § 167, subd. 8). There has been no such notice here, written, oral or implied.[2] Further, there has been no proof that the alleged driver, Diaz, was not, himself, covered by a policy of liability insurance. (See Sperling v. Great Amer. Ind. Co., 7 N Y 2d 442; Matter of Phœnix Assur. Co. of N. Y. [Digamus], 9 A D 2d 998.)
The petitioners’ assertion, as I have stated, is that the vehicle was stolen and operated without the permission of the owner (Numbers 4 and 5 on the above-enumerated list of conditions precedent), and was, therefore, “ uninsured ” within the meaning of the order providing for a trial of that preliminary issue.
It would seem that, under a strict construction of the definitions of the statutes and the policy endorsement, this contention would be lacking in force. For, while an injury caused by a vehicle which was stolen or operated without permission, on the one hand, and one sustained due to a vehicle as to which no policy of indemnity was in effect at the time or which was uninsured and registered outside the State of New York or which was a hit-and-run vehicle, on the other, will have the same result — that is, a proper claim against the MVAIC'— they are not precisely the same thing. And thus it may well be argued that, inasmuch as the statutes and the endorsement specifically define the phrase used in the order of Special Term, the scope of the issue to be determined by me is no broader than items 1, 2 and 3 set forth in subdivision (2) of section 600.
There are two situations which are relevant in connection with this contention: (1) When the Judge at Motion Term — before *963 whom an application is made permanently to stay the arbitration (in effect, to hold that the claimant is not entitled to the arbitration which he seeks) — refers an issue of fact for preliminary determination to the trial court, be it Judge alone or Judge and jury, and “holds in abeyance” the disposition of the motion-in-chief pending determination of the issue; and (2) when such a matter is referred to the trial court by the Justice at Motion Term who does not hold in abeyance the resolution of the application, albeit he does not appear to have made a final disposition of the motion.
In the former situation, I have held that the trial court is limited to consideration of issues within the specific terms of the reference (Matter of Turner [MVAIC], 47 Misc 2d 1097). Somewhat, but not altogether, analogous is the case where a matter is referred to a Referee who is to hear and report. Such a Referee may not proceed beyond the order of reference; nor, indeed, may he stop short of it.[3] When, however, the referring Justice has not “held in abeyance” (which is the situation here), the question arises whether the Trial Judge has the limited scope of the Referee or the wider scope which he would normally have in a general trial before him. And, in considering this issue, it should be kept in mind that, under the CPLR, special proceedings are to be distinguished from actions and motions in respect of a number of aspects — not only of procedure, but of substance as well (see Frederick Kurzban, Special Proceedings as Distinguished from Motions, N. Y. L. J., Sept. 24, 1964, p. 4, col. 4; Matter of Knierieman Oil Co. v. Lane, 21 A D 2d 797; Matter of Daniels [MVAIC], N. Y. L. J., Feb. 17, 1965, p. 16, col. 5, Peltis", J. [Sup. Ct., N. Y. County]).
It is the thrust of the contention that the trial court has limited competence in this province that, even where the Justice in Motion Term has reserved nothing for his later disposition, the basic concept of a reference is the isolation of some issue or issues of fact from the proceeding as a whole for a separate determination; that the Trial Judge cannot, generally, know what the referring Justice resolved to his own satisfaction before making the order directing a hearing (cf., as to summary judgment applications, CPLR 3212, subd. [g], and, as to arbitration motions, CPLR 7503, subds. [a] and [b]); and that *964 to go beyond the precise terms of the order as formulated would risk the making by a Judge of equal jurisdiction of a determination which would be in conflict with one already made, albeit sub silentio, by the Justice who has referred the matter. (See Parks v. Welsh, 230 App. Div. 734; cf. Matter of Milliken Woolens [Weber Knit Sportswear], 20 Misc 2d 504, revd. 11 A D 2d 166, affd. 9 N Y 2d 878.) This theory thus reaches the conclusion that here, as in the other instance discussed, nothing more is before the Trial Justice in such case than the narrow issue or issues specifically referred.
But I was of the view at the trial that the proper rule to be applied in a matter such as this — where the crux of the issue is the alleged “ uninsured ” status of the offending vehicle at the time and place of the accident — is a hearing procedure which would not result in a multiplicity of applications and proceedings premised upon a breakdown of the several factual elements upon which lack of insurance is grounded (Insurance Law, § 167, subd. 2-a; § 600, subd. [2]). Both the claimant and the MVAIC are entitled to have the validity of all of the preliminary statutory or contractual bases of the claim determined — in a fashion more clear than the possible unarticulated ruling of the invalidity of some of them by a Judge who orders trial on only others of them. I considered that a different procedure would have been an unsatisfactory and uneconomic utilization of court resources, as well as an unwarranted expenditure of time and energy of litigants and counsel.[4]
In the recent case of Buck v. United States Fid. & Guar. Co. (144 S. E. 2d 34 [N. C., Sept. 22, 1965]) the Supreme Court of *965 North Carolina had occasion to consider some aspects of this question. In that action, the plaintiff was injured in an automobile accident as a result of the claimed negligence of another. 'The plaintiff sought to recover from the insurer of the vehicle she had been driving, under the uninsured motorist’s endorsement contained in the policy. The issue was Avhether the owner of the second vehicle was uninsured, so as to make applicable the plaintiff’s policy endorsement, entitled “ Protection Against Uninsured Motorists Insurance ’ ’. That endorsement and the governing North Carolina statute are, in pertinent part, almost word-for-word identical with our statute and with the New York automobile accident indemnification endorsement, Avhich is standard in this State and Avhich is involved in the instant matter. The issue stipulated by the parties for determination by the trial court in that case was whether the responsible vehicle was an “uninsured vehicle” within the definition of the insurance policy and of the North Carolina statute (hereinafter quoted). The trial court found as a fact that the vehicle involved was operated without the permission, knowledge or consent of its owner, but determined that it was not thereby “ uninsured ” within the applicable definitions, and granted judgment for the insurer. The Supreme Court of North Carolina vacated the trial court’s judgment in favor of the defendant insurer, and remanded with a direction to enter judgment for the plaintiff.
Section 20-279.21 (subd. [b], par. [3]) of the General Statutes of North Carolina was enacted as chapter 640 of the Session Luavs of 1961, and is entitled “ An Act to amend G. S. 20-279.21 defining motor vehicle liability insurance policy for financial responsibility purposes so as to include protection against uninsured motorists.” (Italics added.) The pertinent part provides : “No policy of bodily injury liability insurance, covering liability arising out of the ownership, maintenance, or use of any motor vehicle, shall be delivered or issued for delivery in this State with respect to any motor vehicle registered or principally garaged in this State unless coverage is provided therein or supplemental thereto, in limits for bodily injury or death set forth in subsection (c) of § 20-279.5, under provisions filed Avith and approved by the Insurance Commissioner, for the protection of persons insured thereunder Avho are legally entitled to recover damages from owners or operators *966 of uninsured motor vehicles and hit-and-run motor vehicles because of bodily injury, sickness or disease, including death, resulting therefrom.” (Emphasis supplied.)
The Supreme Court of North Carolina said (pp. 36-37): “ The quoted statutory provision uses but does not define the term ‘ uninsured motor vehicles. ’ The term ' uninsured automobile ’ is defined in the uninsured motorist endorsement attached to and an integral part of the automobile liability policy issued by defendant to plaintiff’s father. The wording of the issue submitted by the parties as determinative implies agreement that the meaning of the term [1] uninsured motor vehicle ’ as used in the quoted statutory provision and of the term ‘ uninsured automobile ’ as used in said policy endorsement is the same.”[5]
In its determinative statement, the Supreme Court of North Carolina held (p. 37):
“In our view, both the intent of the legislation and the wording of the endorsement impel the conclusion that an automobile on which an automobile liability insurance policy has been issued is uninsured within the meaning of said endorsement unless such policy covers the liability of the person using it and inflicting injury on the occasion of the collision or mishap.
“ The question presented and decided is one of first impression in this jurisdiction. Indeed, Application of Travelers Indemnity Company, Sup., 235 N. Y. S. 2d 718, affirmed, without written opinion, Travelers Indemnity Co. v. Melcher, 20 A D 2d 684, 246 N. Y. S. 2d 1015, is the only case disclosed by our research involving a closely analogous factual situation. There, although other questions are discussed at greater length, the holding is in accord with the decision reached herein.”
The importance of this North Carolina case, for present purposes, is that, in determining whether the responsible vehicle was ‘[1] uninsured ’ the court felt that, in construing the phrases involved, it must go beyond the specific definitions to be found in the statute and the policy endorsement, and determined that the vehicle was to be deemed “uninsured” in the eyes of the law not because there was in fact no policy of indemnity insurance issued and in fact in force, but because the vehicle involved was at the time being operated without the *967 permission of the owner — although that circumstance is not within the specific statutory and policy definitions.
The New York ease of Travelers Tnd. Co., cited above, was decided in 1962. It arose out of an accident in March, 1959. The insurance policy involved had been issued in May, 1958, prior to the effective date (Jan. 1, 1959) of the Motor Vehicle Accident Indemnification Corporation Law (Insurance Law, art. 17-A). The policy carried an endorsement known as “Family Protection Coverage Endorsement ’ ’, which provided for insurance coverage to certain dollar limits for bodily injury caused to the insured by the operation of an ‘ ‘ uninsured automobile ”. Under clause II (c) of the endorsement there involved an “uninsured automobile”, insofar as here applicable, means “ an automobile with respect to the ownership, maintenance or use of which there is no bodily injury liability bond or insurance policy applicable at the time of the accident with respect to any person or organization legally responsible for the use of such automobile.” It will be noted that this provision is substantially the same as that to be found in insuring agreement II (b) (1) of the New York automobile accident indemnification endorsement concerned in the instant matter and quoted supra.
The New York court, like the North Carolina Supreme Court, went beyond the specific limited definition found in the applicable endorsement. The implied conclusion was there drawn, too, that, when a vehicle is operated without permission, the policy which has been issued on that vehicle is inapplicable. It was said at nisi prius: “ Upon the uncontroverted proof contained in the present record, the court finds as a fact that at the time of the accident Schellhorn’s automobile was operated by O’Sullivan without the consent and permission of Schellhorn. On the basis of this determination, the court holds that the Schellhorn automobile was an ‘ Uninsured Automobile ’ within the definition thereof contained in the Endorsement, and under the terms of the policy.” (235 N. Y. S. 2d 718, 721.)
Matter of Lowe (Ocean Acc. & Guar. Corp.) (21 Misc 2d 1042) was cited in the Travelers Ind. Co. case. (The other cases cited are not relevant at the present juncture.) There involved was an endorsement which defined ‘ ‘ uninsured automobile ’ ’ to include “ an automobile used without permission of the owner thereof if there is no bodily injury liability insurance applicable at the time of the accident with respect to the operator thereof”; and the court held that, since the responsible driver had been operating a car not owned by her and without the permission of its owner (an exclusion in her policy), her own insurance policy did not apply to the situation. There *968 fore, when the court ruled that the responsible operator was driving-' an “uninsured automobile ”, the court did not go beyond that specific term as defined in the applicable policy.
It appears to me that the rationale of the Buck and Travelers Ind. Co. cases (supra), and the implications thereof, are reasonable, practical and clearly lead to the conservation of the resources of both court and litigant. Thus, it was my view at the trial that, notwithstanding the specific definitions to be found in the statutes and the endorsement, the phrase “ uninsured vehicle ’ ’ may properly be understood to be a generic term meaning “ uninsured as to this situation ”, and encompassing, in a matter such as the instant one, all the possibilities set forth in the Insurance Law which might result in the propriety of a claim against MYAIC.
This, indeed, appears to me to have been the thought of the majority of the Appellate Division, Fourth Department, in McCarthy v. MVAIC (16 A D 2d 35, affd. 12 N Y 2d 922). There, the claimant was unsuccessful because, in essence, her injuries had been caused by an intentional assault carried out by means of a motor vehicle; and this was held not to be an ‘ ‘ accident ’ ’ within the terms of the coverage of the policy or the endorsement. (Cf. Matter of Fuscaldo [MVAIC], 24 A D 2d 744.) I say that the point which I have just discussed is implicit in the opinion of the majority because the court says (16 A D 2d 35, 40-41):
‘[1] A disclaimer or denial of liability by an insurance company [item 6 on the list of conditions precedent quoted from the statute supra] may place the automobile in the position of an uninsured automobile, within the meaning of the MYAIC indorsement, if, but only if, the effect of the disclaimer or denial is to deprive the injured person of the protection afforded by a standard automobile liability insurance policy. As used in the MYAIC Law, the term ‘ disclaimer or denial of liability ’ means a repudiation of liability [1] because of some act or omission of the person or persons liable or alleged to be liable ’ (MYAIC Law, § 608, subd. [c]). This refers to an act or omission by. the insured automobile owner in his relationship to his insurance company, constituting a breach of the conditions of the policy (cf. MYAIC Law, § 620). There was no denial or disclaimer on any such ground here.
“ A sharp differentiation must be made between (a) a finding that the insurance company is not liable under a valid policy because the injuries were not caused by accident and hence were not within the risks covered by the policy and (b) a finding that the company is not liable because the policy was not in force at the time in question or because there had been a *969 breach of a condition of the policy by the insured rendering it unenforcible. In the latter case, the finding establishes that no enforeible insurance policy was in effect at the time of the injury; hence the automobile was an uninsured automobile within the meaning of the MVAIC indorsement. In the former case, the finding recognizes that there was a standard insurance policy of the required type in force at the time which covered all the risks which were required to be covered; hence no uninsured automobile was involved and MVAIC could not be held liable. ’ ’
In regard to, and accordance with, the specific finding and final conclusion in McCarthy — which are not of as much significance to my present point as is the reasoning expressed by the court — see Matter of Berman (Travelers Ind. Co.) (11 Misc 2d 291), relied upon by the Appellate Division, First Department, in Rosen v. United States Fid. & Guar. Co. (23 A D 2d 335) and by the Appellate Division, Fourth Department, in Matter of Vanguard Ins. Co. (Polchlopek) (23 A D 2d 625).
In the light, then, of the cases discussed above, and on the premise that reason, logic and pragmatism have a certain role to play in the development of the law, I had decided to invoke the broader meaning of the term “ uninsured vehicle ”, and thus determine in this single proceeding the several factual issues actually involved in a definitive disposition of the matters preliminary to the right of the claimants to arbitration.
In the process of preparing this opinion, I came across a decision of the Court of Appeals of this State, rendered after the close of the trial before me and after the final submission of briefs by counsel, which confirms my thought that, under an order of reference such as is here involved, it is proper that each of the several conditions precedent listed in the statute be considered, insofar as raised by the parties or otherwise relevant to the disposition of the matter. Indeed, the opinion of the Court of Appeals, as I understand it, makes such a procedure not only proper but would seem to forecast a holding that it is mandatory (Matter of MVAIC [Malone], 16 N Y 2d 1027).
In the situation dealt with there, one Malone was involved in an accident with a vehicle owned and operated by one Hover-male. After the accident, Hovermale’s insurer, Crown, voided the policy as of its effective date and disclaimed any liability in regard to the accident. Malone demanded arbitration against MVAIC, which llien moved for a stay on the theory that there must first be a preliminary judicial determination of the validity of the disclaimer. Special Term denied the application of MVAIC for a stay of arbitration. The Appellate Division, *970 Second Department, affirmed the ruling of Special Term, citing a number of cases to the effect that the relevant condition precedent to arbitration was the fact, not the validity, of a disclaimer by the insurer (19 A D 2d 542). In so doing, the appellate court said (p. 543): “ Since there is no requirement in the statute (Insurance Law, § 167, subd. 2-a; § 600, subd. [2]) that the disclaimer be a valid one, we reject petitioner’s contention that, as a condition precedent to arbitration, the insured must first obtain a judicial determination of the right of the insurer of the motorist allegedly responsible for the accident to disclaim liability ’ ’.
The Court of Appeals unanimously reversed this ruling, saying, in pertinent paid (p. 1029): “ There is in this record a bare assertion that this Crown policy was not in effect at the time of the alleged accident or had never taken effect but this consists of nothing more than a letter from a representative of insurer Crown stating that its policy had never gone into effect. Elsewhere in the record it appears or is suggested that the basis for this unilateral declaration of noncoverage is that the insured had falsely represented to the. insurer Crown that he was a resident of West Virginia at the time the policy was issued. Such a declaration by an insurer does not ipso facto and without judicial investigation satisfy the requirement of the MVAIC endorsement that for MVAIC coverage the alleged tort-feasor must have been uninsured at the time of the alleged accident. We construe subdivision 2-a of section 167 and subdivision (2) of section 600 of the Insurance Law as giving MVAIC an opportunity to litigate before a court, rather than before an arbitrator, the question of whether the Crown policy failed to take effect or was validly cancelled.”
The important point to be noted in the analysis of Malone and the consideration of its relevance to the instant matter is that, in dealing with a case which quite clearly involved only one of the conditions precedent listed in the MVAIC statutes — that of a disclaimer of liability by the insurer — the Court of Appeals spoke'of “ the requirement of the MVAIC endorsement that for MVAIC coverage the alleged tort-feasor must have been uninsured at the time of the alleged accident”. In my view, this is a clear declaration that the term “uninsured”, when used as in the matter before me, is a generic term which encompasses at least some aspect of each and every one of the several conditions precedent listed in the statutes, and not merely a narrow one based upon a strictly limited construction of the statute and endorsement.
The question then becomes whether any of the situations resulting in a vehicle being ‘ ‘ uninsured ’ ’, in the generic sense, *971 exists here. If that definition is applied, then the petitioners’ position has two facets to be considered. One is that, because the car was stolen or otherwise used without permission (as assumed), it may be presumed in advance that the insurer will disclaim, and, as a consequence, that the policy is not enforcible. The other is that the conditions precedent set forth in the statute are alternatives, and that disclaimer is not required in all, but only in one, of them — and not where, as here contended, the vehicle is stolen or operated without permission.
Accepting the second aspect of the contention- — that the conditions precedent are alternatives — it is my finding on the facts that none of the several situations set forth in the statutes has been proven here. As pointed out above, Numbers 1, 2 and 7 were not in issue and, as to Numbers 3 and 6, there was uncontradicted and credible testimony that there was a liability policy in effect on the Ortiz car at the time in question, and that the insurer had neither disclaimed liability nor denied coverage with regard to the accident. And there was no proof that the alleged driver did not have coverage. There thus remain for consideration situations Number 4 and Number 5 — that is, whether the vehicle in question was either stolen or otherwise operated without the permission of its owner.
The petitioners urge that, as a matter of law, the vehicle must be considered “ uninsured ” because (1) there was no permissive use, the vehicle having been stolen — a contention which I shall discuss shortly — and (2) the policy is unenforcible — i.e., the insurer is not liable, because (a) there was no notice to it and (b) there was no filing of an accident report with the Department of Motor Vehicles.[6]
In support of this latter argument- — of the unenforcibility of the policy — the petitioners rely upon the case of MVAIC v. American So. Ins. Co. (44 Misc 2d 525, 527) quoting therefrom the following language: “ It affirmatively appears that neither plaintiff nor defendant’s insured complied with the notice requirements of the policy, conditions precedent to any recovery thereon, and that, as a matter of law, the types of notice mandated were not afforded, the notification finally given was untimely, and the delay involved was unreasonable (see Deso v. London & Lancashire Ind. Co. of America, 3 N Y 2d 127).”
*972 In .the case last cited hereinabove and in the case therein cited the insurer was the defendant and asserted its defense of noncompliance with the notice requirements of the policy. Thus, that issue was properly before the court. But here, the issue of disclaimer of liability is not before me, there having been none. Had such disclaimer been made, I would be bound to determine its validity. This is, in my view, the effect of the recent holding of the Court of Appeals of this State in Matter of MVAIC (Malone) (16 N Y 2d 1027, supra) which overruled a substantial body of case law which had held that the fact, rather than the validity, of a disclaimer was all that was necessary as a condition precedent to arbitration. (Cf. “MVAIC Six Years Later — A Practical Appraisal”, 39 St. John’s L. Rev. 321, 337-339, 342 [May, 1965].)
The petitioners also place reliance upon a report by Special Referee Tripp in Matter of Leahy v. Allstate Ins. Co. (Index No. 13563/1964, Supreme Court, Queens County, dated June 18, 1965). In particular, the petitioners rely upon the Referee’s determination that an insurer has no duty to pay if the vehicle is stolen or, at any rate, operated without permission, which wag an essential circumstance proven to the Referee’s satisfaction in that matter. That holding — to which no exception is taken by me — is entirely beside the point here.
The petitioners apparently seek to prevail upon the theory that their only hope of recovery is in the present proceeding since any claim which they would now make against the insurer of the allegedly responsible vehicle might be untimely, and because the owner of that vehicle, Ortiz, did not notify his insurer. But, while that result — if it be the true one — may be unfortunate indeed, I cannot accept the proposition that the combination of the petitioners having failed to make due claim against the insurer, and the insured’s failure to notify his insurer or to file an accident report, however it may affect the enforcibility of the policy in an action against the insurer, can compel the conclusion here that, as a matter of law, the vehicle was uninsured. (Cf. Cousins v. Liberty Mut. Ins. Co., 47 Misc 2d 413.)
It is my conclusion moreover, that, in the instant matter, it has not been adequately proven by the petitioners (although given every opportunity to do so) that the vehicle was either stolen or operated without permission — a factual issue as to which the burden of proof was upon the claimants.
The petitioners here contend that their Exhibit 10, which is a complaint of larceny against Diaz, the driver, by Ortiz, the owner, and was sworn to by Ortiz, is proof that the vehicle *973 was, as a matter of fact, stolen and, therefore, used without permission. Reliance is placed by the petitioners upon the case of Matter of Lowe (Ocean Acc. & Guar. Corp.) (21 Misc 2d 1042) discussed in another context (supra). In its opinion, the court stated (pp. 1046-1047): “ The question before the court is: May the report of a motor vehicle accident made by an owner of a motor vehicle involved in the accident, reported to and filed with the Bureau of Motor Vehicles, Department of Taxation and Finance, in Albany, New York, stating that his vehicle was being driven by an operator without his permission to do so, constitute sufficient evidence of that fact? ” And the court gave the categorical answer: “Yes.” Then the court later went on to say: “ It may be that the insurance contract, the certificate of insurance, the notice of termination, the report of motor vehicle accident, as well as the individual words contained therein, are subject to court actions and special proceedings in the future. Nevertheless, the duly filed accident report, subscribed by the owner, stating, without contradiction, that the owner did not permit the operator to drive the automobile, proven by a certified, photostatic copy prepared by the Bureau of Motor Vehicles, Department of Taxation and Finance, of this State, is compliance with the condition precedent to arbitration in this case.”
As I have hereinbefore mentioned, there was no accident report filed with the Department of Motor Vehicles in the instant case. And even were I to go along with the petitioners’ contention that the criminal complaint, without more, is proof of what is therein alleged — just as my learned colleague held in Loive was the effect of the report to the Department of Motor Vehicles — there is a further fact proven in the instant case that negates the contention. For it appears that the charge of larceny made by Ortiz against Diaz was dismissed by the Criminal Court having jurisdiction upon the ground that there was not “ sufficient cause to believe the * * * defendant * * * guilty of the offense * *
, It was further proved before me that the driver, Diaz, pleaded guilty to the charges of “ Unlicensed Operator ” and of “ Leaving Scene of Accident — Personal Injury ”, both arising out of the same events herein involved. Diaz was found guilty on the basis of these pleas, and was committed on these two charges on November 11,1964, the same day on which the larceny charge was dismissed. While these guilty pleas and the sworn complaints upon which the charges were based show that Diaz was driving the vehicle in question, they are not proof that he was doing so without permission or that he had stolen the vehicle. *974 To infer, as the petitioners suggest, that, because the owner, Ortiz, lodged a complaint of larceny, the vehicle was in fact stolen would be to come to a conclusion as to which the Criminal Court found an absence of probable cause.
It is also to be noted that Ortiz’ complaint in the criminal action shows that his belief as to some of the circumstances was based upon what he was told by the arresting officer who had no personal knowledge as to the permitted use of the vehicle, and perhaps by one Villafane, who did witness the accident but had no personal knowledge as to whether Diaz stole the vehicle.
Further, considering the arresting officer’s statements, to be found in the criminal complaint of leaving .the scene and in the “ Aided and Accident Card ”, which he prepared, it appears that he merely inferred that the vehicle was stolen from being told by Villafane that Diaz was the operator of the automobile, and that, after driving onto the sidewalk and injuring the claimant, Diaz walked away. While this might well be sufficient probable cause for the arrest of Diaz, it does not, in my view, demonstrate that he did, in fact, steal the vehicle or operate it without permission.
The owner, Ortiz, was not a witness in the trial before me, despite the opportunity given to the petitioners to secure his attendance, and their efforts to compel his attendance. His testimony might, of course, have -been of assistance in resolving the issues in .this matter; but I cannot build a case in petitioners ’ favor — as they have sought to do — because of his absence. I must take the proof as it is presented to me, notwithstanding that the principal petitioner is an infant and that the petitioners’ efforts to obtain testimony in support of their case have been fruitless.
It is my conclusion that the petitioners have failed to establish: (1) the absence of a policy of liability insurance, issued either on the alleged responsible vehicle or the alleged owner or driver, in effect at the time of the alleged accident; (2) any disclaimer of liability or denial of coverage by the insurer of the allegedly responsible vehicle, owner or driver, as to .the alleged accident; and (3) that the vehicle in question was either stolen or operated without the permission of its owner.
I hold, therefore, that, as to the question referred .to me for trial, the alleged responsible vehicle was not, at the time of the alleged accident, an “uninsured vehicle”.

. There was a minor degree of confusion as to the description of the vehicle. In most instances, when the vehicle is referred to or identified in the testimony, exhibits or briefs, some or all of the following information is always given: 1953 Chevrolet, New York Registration Plate No. 7TJ-4262, Serial No. LAQ541690 and Insurance Policy No. ZA 144324.
Some apparent discrepancies arose in the following instances:
(1) The Aided and Accident Card, Petitioners’ Exhibit 1 for identification, prepared by Patrolman Buss, the arresting officer, identifies the vehicle as a 1954 Chevrolet — all the other information thereon coincides with the foregoing.
(2) During some of the examination, I made certain inquiries in respect of the vehicle and described it as of the vintage of 1954-
*962 (3) Respondent’s Exhibit “A” for identification, being an inquiry made by respondent of the Department of Motor Vehicles, indicates the New York Registration Plate No. as being 7Y (not 7U) —4262.
In my view, in the light of all the proof, these discrepancies are de mmimis, and it is my conclusion on the facts that there was one, and only one, vehicle here involved — and that the vehicle was covered by the insurance policy above referred to. The discrepancies above indicated were just simple mistakes.
Reference was also made on the trial to Insuring Agreement IV (a) (4) of the pplicy, which provides for coverage of a newly acquired automobile replacing or additional to the vehicle specifically described in the policy. I hold that, under the facts presented, this clause is not applicable.

. It should be noted that the petitioners have not instituted any action against Ortiz, the owner of the vehicle, or Diaz, the driver; nor have they notified the insurance company of the accident or filed any claim with it.

. For example, I have had occasion heretofore to refer a matter hack to a Referee who had not passed upon certain specific issues — set forth in the order of reference — on his assumption that they were not relevant to a resolution of the motion. I ruled that that was not a determination for the Referee to make (Nugent v. Molloy, N. Y. L. J., Sept. 18, 1964, p. 16, col. 3 [Spec. Term, Part 1, N. Y. County]).

. An interesting appellate decision avoiding multiple proceedings was rendered in Spadaccini v. City of New York (9 A D 2d 502). The court at Special Term (204 N. Y. S. 2d 296) denied the motion of the plaintiff in an action pending in the Supreme Court in New York County to transfer to New York County, for joint trial with the New York County action, an action pending in the Supreme Court, Bronx County, on the ground that the Bronx suit had already reached the head of the calendar for trial, and the plaintiff there would be prejudiced by the two-year delay likely in New York County. The defendant city did not oppose a joint trial in New York County, but did object to a trial in Bronx County — relying upon section 182-b of the Civil Practice Act in insisting that the ease against it remain in New York County.
The Appellate Division, First Department, agreed with the court at Special Term that a joint trial in New York County would have prejudiced the plaintiff in the Bronx County action. The appellate court then ruled that the Supreme Court’s inherent jurisdiction to change the venue of an action governed over the cited section of the Civil Practice Act. In its opinion, it said: “ Certainly, the ends of justice will be served and a multiplicity of trials will be avoided if a joint trial is had of the two actions, herein involved, in Bronx County.’* Accordingly, the Appellate Division reversed the decision of Special Term and ordered a joint trial of the actions to be had in Bronx County.
*965 The critical point to be noted in respect of this holding is that there had been no motion or request made by any party before the court at Special Term for joint trial of the actions to be held in The Bronx. A fortiori, it seems to me, the procedure Avhich I invoked in the instant matter — similarly to avoid multiplicity of litigations — is both proper and desirable.

. That is almost, but not quite, the situation in New York, where, by the terms of the endorsement, the definition of “ uninsured automobile ”, including as it does a hit-and-run vehicle, is even broader than that found in the statute. This inclusion of hit-and-run vehicles makes the sum of the New York provisions essentially the same as the sum of those of North Carolina (see Gen. Stat., § 20-279.21, subd. [b], par. [3], quoted supra).

. It should be noted at this point that there is no rule of law to the effect that such a report (although required by law to be filed by a driver involved in an accident resulting in personal injuries or property damage above a spec-i ified amount [Vehicle -and Traffic Law, § 605]) is a condition precedent to the successful prosecution of a claim against an insurer — unless, of course, this be a requirement of the particular policy involved.